IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2012

## JOHN HOWARD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 03-05005    Paula Skahan, Judge**

_____

**No. W2011-01788-CCA-R3-PC  - Filed May 3, 2012**

_____

The petitioner, John Howard, appeals the denial of his petition for post-conviction relief, alleging that he was denied the effective assistance of counsel at trial and on appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Barry W. Kuhn (on appeal) and Donna Armstard (at hearing), Assistant Public Defenders, for the appellant, John Howard.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Doug Carriker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Shelby County Criminal Court jury convicted the petitioner of the April 4, 2003 first degree premeditated murder of his brother, Tim Howard.  According to the facts summarized by this court on direct appeal, the victim was concerned about the petitioner's management of the estates of their mother and younger brother, and the petitioner became "'very agitated at the situation'" in the days preceeding the murder. *State v. John Fred Howard*, No. W2008-00208-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, Apr. 17, 2009).  The victim's wife, Marcia Howard, testified at trial that she and the victim were in the process of a divorce at the time of his murder and that she had obtained an order of protection against the victim because he had threatened her safety. *Id.*  Nevertheless, she

testified that the victim had sought treatment for his alcohol addiction and that he had never been abusive toward her. *Id.* Ms. Howard recalled that the petitioner owed the victim money from the estates but that the petitioner told her that he would not give the victim any money. *Id.* After the victim's death, Ms. Howard found a note referencing the disagreement over monies owed to the victim in the petitioner's closet that was "torn up," "wadded up," and "covered in blood." *Id.* at 3.

The victim's divorce attorney, Richard Skip Carnell, testified that the petitioner was overly interested in the victim's divorce proceedings and "'very pushy'" about the property involved in the settlement. *Id.* Mr. Carnell said that he told the petitioner that he had encouraged the victim to go to the police regarding the money missing from the trust accounts. Mr. Carnell acknowledged Ms. Howard's obtaining an order of protection but insisted that such orders were "'pretty standard'" in divorce proceedings. *Id.* He also said that the victim was in a good mood on the day of the murder. *Id.*

The petitioner's neighbor, Robert Brown, testified that he heard a man scream at approximately 6:30 p.m. on the night of the murder. *Id.* The victim was begging for help. Upon investigation, Mr. Brown saw the two men inside the chain link fence of the petitioner's yard. The petitioner bent over the victim, grabbed the victim around the chest, and made "a downward chopping motion." *Id.* He saw the petitioner go back into the house. The victim was lying in a "'shiny substance.'" *Id.* at 4.

Doctor O.C. Smith testified that the victim suffered multiple stab wounds and blunt force trauma injuries. *Id.*

The petitioner testified at trial and claimed that the victim attacked the petitioner after the petitioner refused to sign "an agreement regarding the trust fund whereby the [petitioner] would repay the money by obtaining a mortgage" on the house the men had inherited from their mother. *Id.* The petitioner said that he defended himself by striking the victim "with the butt end of a closed folding knife in order to knock the victim unconscious, but it only made the victim angrier." *Id.* The petitioner said that the victim continued to attack him even as the petitioner threatened to "cut" the victim. When the victim would not stop, the petitioner testified, he "cut [the victim] in the neck." *Id.* In his statement to police, the petitioner told police that he was "terrified" of the victim because the victim had had martial arts training and had told the petitioner that "he knew several ways to kill people." The petitioner also admitted to police that he moved a gun into the kitchen after stabbing the victim. *Id.* at 5.

Psychiatrist Doctor William Walters testified that he had reviewed the victim's mental health records and that, based upon that review, he concluded that the victim "was

delusional and violent." *Id.*

Following his jury conviction of first degree premeditated murder and the denial of a timely but unsuccessful motion for new trial, the petitioner appealed. This court affirmed the petitioner's conviction on direct appeal*, see id.* at 19, and the supreme court denied his application for permission to appeal on September 28, 2009, *see State v. John Fred Howard*, No. W2008-00208-SC-R11-CD (Tenn. Sept. 28, 2009). The petitioner then filed a timely petition for post-conviction relief, alleging, among other things, that he had been denied the effective assistance of counsel at trial and on appeal. Specifically, he alleged that his counsel performed deficiently by failing to present the testimony of Ms. Howard's divorce attorney and the victim's treating psychologist, by failing to secure an accounting of the trusts to establish that the petitioner was innocent of financial wrongdoing, by failing to seek suppression of his pretrial statement to police, by failing to request a jury-out hearing before the presentation of evidence regarding the misappropriation of estate funds, by failing to adequately investigate the case, by failing to object to hearsay information, and by failing to prepare the petitioner to testify at trial.

At the evidentiary hearing, Sheree Hoffman testified that she represented the victim's ex-wife, Marcia Howard, in her divorce from the victim. During the pendency of the divorce proceeding, Ms. Hoffman contacted the victim's attorney via letter on two occasions and told him that the victim "continued to make threats against [Ms. Howard's] life." She spoke with trial counsel by telephone prior to the petitioner's trial. She agreed to testify, and trial counsel later told her that her testimony would not be needed.

The petitioner testified that he did not "believe that the prosecution strategy was well anticipated" by trial counsel. He said that the State's theory was that "the motive was embezzlement" and that he had talked to trial counsel "about getting some kind of reconciliation of these trusts to prove that there wasn't any wrongdoing in them." The petitioner conceded, however, that he was "having trouble getting any checks from the banks" to create a reconciliation. He said that they did not hire a financial expert "because [he] could never get all the checks. So, that was kind of moot." The petitioner recalled that he showed trial counsel "a note from the victim that he was willing to settle the estate for $109,000" which was, to the petitioner, "an admission that there's . . . nothing wrong." He said that he did not feel that "anybody used [the note] in an effective way." The petitioner first said that no one "understood what the note meant but" him, but later he testified that the meaning of the note "was obvious." He said that his brother was entitled only to "about half that" sum of money. The petitioner said that trial counsel should have requested a hearing out of the presence of the jury before the State was permitted to put on proof of any financial crime. He conceded, however, that trial counsel objected to the evidence and asked for proof of the embezzlement allegations before any more testimony was presented.

The petitioner said that his trial counsel "never really demonstrated" the petitioner's "fear of being killed" by the victim. He conceded that counsel presented the testimony of a psychiatrist about the victim's mental health issues but argued that counsel should have called the victim's treating psychologist as a witness. The petitioner said that trial counsel was unable to introduce the victim's mental health records into evidence because he failed to call the treating physician as a witness. He acknowledged that trial counsel told him that the victim's treating psychologist "probably wouldn't be a very good witness." The petitioner testified that trial counsel "poopooed [the victim's] martial arts skills" and failed to present any evidence of the victim's skill during the trial. The petitioner said that his brother studied martial arts under the tutelage of the father of one of his friends for "a year or so" starting in 1966. He said that he told trial counsel about both the friend and the friend's father but that both men were dead at the time of the trial.

The petitioner testified that he asked trial counsel to call the petitioner's girlfriend to testify to Ms. Howard's fear of the victim. He also wanted counsel to call Lou McKnight and Dave Brown to testify that the victim had threatened to kill Ms. Howard.

The petitioner testified that trial counsel failed to preserve certain issues for appeal, including whether the trial court erred by refusing to sequester the jury and to apply the appropriate remedy for the State's losing blood samples.

During cross-examination, the petitioner conceded that he had not been charged with embezzlement or theft and that he hired counsel to prove his innocence of first degree murder rather than financial crimes. He also admitted that the State told the jury that it would not try to prove the defendant's guilt of any financial crime. The petitioner acknowledged that trial counsel told him that the victim's treating psychologist would not be a favorable witness and that counsel arranged the hiring of an expert witness to relay the victim's mental health history to the jury. The petitioner conceded that he provided counsel with his version of events so that counsel knew what his testimony would be, but he maintained that trial counsel never prepared him for the process of testifying.

Trial counsel testified that he was retained by the petitioner just before his arraignment and that he represented the petitioner from the beginning of the criminal process through the conclusion of the direct appeal. Trial counsel said that he engaged the services of assistant trial counsel and an investigator. Counsel said that he met with the petitioner a number of times during the years that his case was pending and that he met with the petitioner "every Sunday . . . or Saturday, for a while, before the last trial date." Counsel said that he and the petitioner discussed the petitioner's testimony and the petitioner's claim that he killed the victim in self-defense. He said that he advised the petitioner to show remorse for the killing and love for the victim, to stop dying his hair, and to "show his age."

Trial counsel testified that he chose not to present the testimony of the victim's treating psychologist because "he wasn't going to be very agreeable regarding [the victim's] being anything more than a blowhard." Counsel said that the doctor would have testified that the victim was the type of person "[t]hat would make threats but not do anything." He recalled that although the victim's mental health records were not admitted into evidence, the defense expert "talk[ed] extensively regarding those records," testifying that the victim "was delusional."

Trial counsel testified that he put on proof at trial identical to that offered by Ms. Hoffman at the evidentiary hearing via his cross-examination of Ms. Howard. Counsel recalled that the letters written by Ms. Hoffman to Mr. Carnell as well as the order of protection obtained by Ms. Howard against the victim were utilized to cross-examine both Ms. Howard and Mr. Carnell. Counsel said that he had difficulty obtaining proof of the victim's skill at martial arts, explaining, "[I]t was just a year or less of training when [the victim] was a teenager and [those who trained him] were all dead. There was no one that my investigator could find [that] could back up the information about martial arts training." Trial counsel recalled that the petitioner testified about the victim's martial arts training and his violent nature.

Trial counsel testified that he chose not to call the petitioner's girlfriend as a witness because she told him that the petitioner had told her things about the crime that were "inconsistent with the evidence that was presented." Counsel said that her testimony would have supported the State's theory that the petitioner had attempted to stage the crime scene after murdering the victim.

Trial counsel testified that he asked that the jury be sequestered and that the trial judge said "he was not going to allow it . . . unless we could show . . . a lot of publicity, and we couldn't show that." Counsel said that he was very aware of what Mr. Brown's testimony would be and that counsel "made sure [the petitioner] knew that was going to be a big problem." Counsel said that the witness testified that "the victim was beat senseless to such an extent that he could not defend himself" before the petitioner killed him. Counsel said that the jury obviously did not believe the petitioner's version of the killing because they did not deliberate long and convicted him of first degree murder.

During cross-examination, counsel clarified that the State never alleged that the petitioner actually engaged in "any financial misdealings" and only attempted to show as motive the petitioner's "agitation" as a result of the victim's accusations of financial wrongdoing. He emphasized that "there was no proof that there was any money taken" so "there was nothing to refute" during the trial. Counsel testified that he presented testimony via the defense expert regarding the mental health of the third Howard brother, Charles, as

well as extensive proof of the victim's mental health history. Counsel acknowledged that he did not call Ms. Hoffman as a witness and that he did not tender into evidence the letters she had written to Mr. Carnell regarding the victim's threats toward Ms. Howard. He noted, however, that he did offer into evidence the actual order of protection obtained by Ms. Howard on the basis of those threats. Counsel added that the defense presented "all kind of evidence that [the victim] had violent tendencies." Despite post-conviction counsel's unnecessarily belaboring trial counsel's failure to call Ms. Hoffman, trial counsel maintained that he chose not to call her as a witness because he "got in all the evidence that she was going to be able to present."

Trial counsel acknowledged that he did not file a written motion seeking to have the jury sequestered, but he said that he asked the court to sequester the jury and that the court denied his motion based upon a lack of publicity. Counsel testified that he had "no proof" of any publicity about the case just before the trial, recalling that there was only a single news article published four years prior to the petitioner's trial. Counsel said that he raised the issue in his motion for new trial and on appeal but acknowledged that this court treated the issue as waived because there was no transcript of the hearing on the issue. Counsel said that he believed "it was going to be included in [the] transcript" and that "[i]t was very short, just a couple of sentences or less than a paragraph probably . . . because we could not produce any kind of prejudice."

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In a later-filed, written order, the court denied post-conviction relief, ruling that the petitioner had failed to establish his claims by clear and convincing evidence. The court concluded that trial counsel's decision to forego the hiring of a financial expert to deal with the suggestions of financial misdealing and instead focus on the murder charge was a valid tactical decision as part of a reasonable trial strategy. The post-conviction court accredited counsel's testimony that he prepared the petitioner to testify at trial. The court concluded that counsel's decision not to call Ms. Hoffman, the petitioner's girlfriend, the victim's treating psychologist, and certain others as witnesses qualified as a reasonable trial strategy because trial counsel was able to present the same proof via other witnesses. Finally, the post-conviction court ruled that the petitioner had abandoned claims that counsel performed deficiently regarding the admission of details of the handling of the trust accounts during the testimony of Ms. Howard because he failed to present proof to support this claim during the hearing.

In this appeal, the petitioner again contends that he was deprived of the effective assistance of counsel, claiming that counsel performed deficiently by failing to adequately present the petitioner's claim of self-defense, by failing to present evidence to refute the State's claim that the petitioner had misused funds from the estates of his mother

and brother, by failing to confer with the petitioner, by failing to request a jury-out hearing before evidence regarding the misuse of trust funds was presented, and by failing to prepare an adequate record on appeal. The State asserts that the petitioner failed to prove his claims by clear and convincing evidence.

We review each of the petitioner's claims with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

*Failure to Adequately Present Claim of Self-Defense*

The petitioner argues that trial counsel failed to adequately present his claim

of self-defense by failing to call Ms. Hoffman and the victim's treating psychologist to testify about the victim's violent nature.

At the evidentiary hearing, Ms. Hoffman testified that she had written letters to the victim's divorce attorney to inform him that the victim had threatened to harm Ms. Howard. Trial counsel presented abundant proof of the victim's threats toward Ms. Howard during his cross-examination of Ms. Howard and Mr. Carnell at trial. Other than the admission of the actual letters, Ms. Hoffman's presence as a witness would have done little to bolster the petitioner's claim of self-defense. Moreover, the letters themselves, while showing that the victim had threatened violence against Ms. Howard, offered nothing in the way of proof that the victim had demonstrated threatening behavior toward the petitioner.

Although the petitioner claims that counsel should have called the victim's treating psychologist to testify about the victim's mental health history and violent nature, trial counsel testified that he interviewed the psychologist and that the psychologist's testimony would not have been favorable to the petitioner. Indeed, counsel said that the psychologist insisted that the victim was "a blowhard" who would not have acted upon his threats. More importantly, however, the petitioner failed to present the testimony of the psychologist at the evidentiary hearing. "When a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id.* The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id.*; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995).

Similarly, although the petitioner claims on appeal that trial counsel should have called Lou McKnight and Dave Brown as witnesses to the victim's threatening behavior toward Ms. Howard, he failed to present either witness at the evidentiary hearing. Consequently, he is not entitled to relief on this basis.

*Failure to Present Financial Evidence*

The petitioner claims that trial counsel performed deficiently by failing to "present records of the estate of the mother . . . that would have shown that the suspicion that the victim had regarding misappropriation of funds or waste of assets from the estate was delusional, which would have further proven that the victim had mental problems which made him dangerous." Again the petitioner has failed to establish his claim by failing to present the evidence at the evidentiary hearing that he claimed should have been presented at trial. Furthermore, counsel testified that whether the petitioner had actually

misappropriated funds was not a central concern of the case and that it was the victim's belief that the petitioner had engaged in financial misdeeds that was the crux of the State's case. He said that because it was the victim's belief that mattered and not the veracity of the allegations, he chose to focus his time and energy on the murder charge rather than the suggestion of financial crime. This qualifies as a reasonable trial strategy.

*Failure to Confer*

The petitioner asserts generally that counsel "failed to adequately confer" with him prior to trial, but his only specific claimed deficiency is that counsel failed to discuss his testimony with him before he took the stand. In trial counsel's accredited testimony, however, he said that the two discussed the petitioner's testimony on a number of occasions. He said that although they did not practice his testimony, the petitioner had relayed his version of the events repeatedly during the four years that the case was pending prior to trial. Moreover, the petitioner failed to establish what, if anything, trial counsel failed to establish via the petitioner's testimony. Under these circumstances, the petitioner is not entitled to relief.

*Failure to Request Jury-Out Hearing*

The petitioner claims that trial counsel performed deficiently by failing to request a hearing out of the presence of the jury before the State presented any evidence of the petitioner's alleged financial misdeeds. Specifically, he contends that counsel should have requested a hearing before Mr. Carnell offered testimony that the petitioner might be guilty of a crime for his handling of the estates. He failed to establish, however, that the testimony was actually inadmissible. The State's theory of the case was that the petitioner murdered the victim because the victim believed that the petitioner had mishandled the estates of their mother and brother. Mr. Carnell's testimony that he told the petitioner that he had counseled the victim to go to the police supports the State's theory. Finally, although this testimony bolstered the State's case, we cannot discern a reasonable probability of a different outcome of the petitioner's trial had it been excluded.

*Failure to Prepare Adequate Appellate Record*

In his final claim, the petitioner asserts that trial counsel performed deficiently by failing to include in the record on appeal a transcript of the hearings on his motions to sequester the jury and to suppress certain photographs of the victim. Counsel conceded that the transcript of the hearing on the motion to sequester was not included in the appellate record, but he stated that he believed that it would be. He also said that the hearing was "very short" and that the motion was unsuccessful because he could not establish a need for

sequestration. The petitioner has failed to prove his claim of ineffective assistance by failing to present evidence at the evidentiary hearing that his claims on appeal had a reasonable probability of success but for counsel's failure to include the transcripts in the appellate record. Indeed, the petitioner presented no evidence that the jury should have been sequestered and did not present any evidence at all regarding the photographs he wanted suppressed.

Because the record supports the conclusion that the petitioner failed to establish by clear and convincing evidence that he was deprived of the effective assistance of counsel, we affirm the ruling of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE